IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                      Case No. 06-10218-JTM

BARRY P. FILLMAN,

    Defendant.

MEMORANDUM AND ORDER

Presently before the court is defendant Barry P. Fillman's Motion to Vacate under 28 U.S.C. § 2255 (Dkt. No. 75). Fillman argues that his constitutional rights were violated because the indictment and subsequent conviction violated the Double Jeopardy Clause of the Fifth Amendment, his sentence was enhanced in violation of his Sixth Amendment right to a jury trial, and that he received ineffective assistance of counsel before trial, at trial, and on appeal. He also requests an evidentiary hearing on these issues. For the following reasons the court denies the motion.

**Background**

Carrying a gun, Fillman entered the apartment of Tammy Gannon and her eleven year old son, Anythony Drake. Fillman placed the gun under a couch and went to lie down in Gannon's bedroom. Gannon was not comfortable with Fillman being in her apartment, but she was able to find and hide the gun. After Anthony came home from school, Gannon told him to borrow a neighbor's phone so she could call and ask a friend to take her and Anthony to her mother's house. At that time

Gannon awoke Fillman and told him he had to leave. Fillman became upset but began to leave. Upon discovering the missing gun he became even more angry and asked Gannon where "it" was, but she denied knowing what he meant. Fillman then left the apartment and quickly returned with a .22 rifle he had retrieved from his truck. He positioned himself at the door in a chair and demanded she return the gun. While Gannon tried to prevent her son from leaving his room, Fillman fired two shots in the direction of Gannon's head but missed. After denying knowledge of the gun again, Fillman shot Gannon in the buttocks. When Anthony came out of his room, Fillman brandished a knife and the frightened Anthony returned to his bedroom.

Several days after this incident, police officers found a man they believed was Fillman in a vehicle. The officers attempted to stop the vehicle and Fillman exited and fled. The officers chased him and found him hiding under a car in an alley. He was ordered to come out from underneath the vehicle. When he got up he was holding a large knife and pointing it at the officers, who ordered him to drop the knife. Fillman did drop the knife but began to flee again. Eventually the officers caught and arrested Fillman. When the officers brought him to his feet they found a flask containing explosive powder and a fuse; the officers also found .22 caliber ammunition in his pockets. Later, the officers searched Fillman's truck and found another device resembling the one found on his person, as well as the .22 caliber rifle used to shoot Gannon. He was charged with five counts stemming from the original incident at Gannon's apartment and subsequent arrest.

On July 23, 2007, the jury convicted Fillman on Counts 1 and 2 of the superseding indictment, both charged possession of a firearm not registered to the defendant. (Dkt. No. 58). The jury also found Fillman guilty of Counts 3-5, all of which charged him with being a felon in possession of a firearm. (*Id.*). This court sentenced Fillman to 120 months each on Counts 1 and 2,

to run consecutively, and 52 months on Counts 3-5, to run consecutive to Counts 1 and 2 and concurrent with each other. (Dkt. No. 58).

On appeal, Fillman appealed his sentence and argued that there was not sufficient evidence to sustain a guilty verdict on Count 2 because there was no evidence regarding the location of the firearm. He also argued that this court improperly calculated his sentence. (Dkt. No. 74).[1] The Tenth Circuit affirmed the conviction and sentence. Fillman now makes three arguments: (1) that his Fifth Amendment right against double jeopardy was violated by multiplicitous charges; (2) that his Sixth Amendment right to a jury trial was violated when his sentence was enhanced by twelve levels based on facts that were not found by the jury or admitted by him; and (3) that he received ineffective assistance of counsel before trial, during trial and on appeal. (Dkt. No. 75). This court will consider each argument in turn.

**Conclusions of Law**

"The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct." *United States v. Smith*, No. 05-20104-01-KHV, 2010 WL 1816331, at *2 (D. Kan. Mar. 1, 2010) (citing *Klein v. United States*, 880 F.2d 250, 253 (10th Cir.1989)). The defendant must show a defect in the proceedings that resulted in a complete miscarriage of justice. *Davis v. United States*, 417 U.S. 333, 346 (1974).

---

[1] *United Stated v. Fillman*, 325 Fed. Appx. 700 (10th Cir. 2009).

*I. Fifth Amendment Double Jeopardy Claim*

First, Fillman argues that his Fifth Amendment right against double jeopardy was violated. He argues that Counts 1-2 are multiplicitous because each count resulted from the same arrest and he is being punished twice for the same conduct. Further he argues that Counts 3-5 are multiplicitous because each subjected him to a $100 fine even though the possession arose from the same conduct.

Fillman was charged in Counts 1 and 2 of being in possession of a firearm not registered to him under 26 U.S.C. §§ 5841, 5861(d), 5845(a), (f), 5847. Count 1 charged Fillman with knowingly possessing a firearm not registered to him, (the destructive device found on him when he was arrested). Count 2 also charged Fillman with knowingly possessing a firearm not registered to him, (the destructive device found in his truck at the time of arrest). (Dkt. No. 31). Fillman argues that because the seizures of the two devices resulted from the same arrest he cannot be punished separately for possession of each device. For the following reasons, the court rejects Fillman's argument.

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior. Although multiplicity is not fatal to an indictment, it poses the threat of multiple sentences for the same offense and may improperly suggest that the defendant committed more than one crime. At sentencing, multiplicity raises double jeopardy implications." *United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir. 2007) (internal citations omitted). "The test [for multiplicity] is whether the individual acts [alleged in the counts in issue] are prohibited, or the course of [conduct] which they constitute" is prohibited. *Id.* If the individual counts are prohibited, separate punishments for violations of each count are allowed. *Id.* If the course of conduct is prohibited only one punishment is allowed. *Id.*

Under 26 U.S.C. § 5841(b), "[e]ach manufacturer, importer, and maker shall register *each* firearm he manufactures, imports or makes. . . ." (emphasis added).[2] According to the express language of the statute, as interpreted by the Tenth Circuit, "each firearm" constitutes a separate offense in a criminal prosecution. *Sanders v. United States*, 441 F.2d 412, 414 (1971) (analyzing the legislative history of the statute). "Thus, one who makes two unregistered firearms subjects himself to prosecution for two violations of the statute, not one, since each firearm must be registered" even if the government seized the firearms during the same arrest. *Id.* Under 26 U.S.C. § 5861(d) "[i]t shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." "One who possesses two firearms, neither of which is registered to him in the National Firearms Registration and Transfer Record, has twice violated the provisions of 26 U.S.C. § 5861(d) and may be prosecuted for each violation." *Sanders*, 441 F.2d at 414.

At the time Fillman was arrested he possessed two separate destructive devices—one on his person and one in his truck. According to the terms of the statute, the use of the word "each" in 26 U.S.C. § 5841 means that it is a separate criminal offense for every unregistered firearm that a person possesses. Similarly, in 26 U.S.C. § 5861(d), possession of each firearm constitutes a distinct offense. Accordingly, Fillman may be charged and punished separately for his possession of each destructive device seized at the time of his arrest.

Fillman also argues that Counts 3-5 are multiplicitous because each count charges him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Dkt. No. 31 and 75).

---

[2]The definition of "firearm" in 26 U.S.C. § 5845(a) includes "a destructive device." A destructive device is further defined as "any explosive, incendiary, or poison gas . . . having a propellant charge of more than four ounces." *Id.* § 5845(f). "Making" a firearm includes, "manufacturing . . . putting together, altering, any combination of these, or otherwise producing a firearm." *Id.* 5845(i).

He argues that even though the sentences run concurrently with each other, he was subject to $100 fines on each count, which makes these 3 charges multiplicitous.[3] Count 3 charged Fillman with possession of a firearm found in his truck. Count 4 charged him as being a felon in possession of ammunition found on his person. And Count 5 charged him with being a felon in possession of ammunition that he used in Gannon's apartment.

Title 18 U.S.C. § 922(g) provides that it is "unlawful for any person . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Generally, the simultaneous possession of multiple firearms "'constitutes only . . . one offense' unless there is evidence that the weapons were stored in different places or acquired at different times." *United States v. Hutching*, 75 F.3d 1453, 1460 (10th Cir. 1996) (quoting *United States v. Jones*, 841 F.2d 1022, 1023 (10th Cir.1988)). In *Hutching*, the defendant was charged with three counts of being a felon in possession of a firearm under 18 U.S.C. § 922(g), the same statute as Fillman. The three weapons were found in the defendant's bedroom, a car in the garage, and his truck. *Id.* The Tenth Circuit held that because the weapons were seized from different locations it was possible to charge and punish the defendant for three separate violations without the danger of multiplicity. *Id.* The possession of ammunition in different locations also constitutes separate violations of 18 U.S.C. § 922(g). *See Hutching*, 75 F.3d at 1460 (citing *United States v. Gann*, 732 F.2d 714, 721 (9th Cir. 1984) (holding that defendant could be charged with multiple violations of 18 U.S.C. § 922(h) when the government seized shotgun ammunition from defendant's vehicle and rifle ammunition from defendant's home)).

---

[3]The "fines" Fillman refers to are the $100 per count special assessments which 18 U.S.C. § 3013 requires.

Tenth Circuit precedent does not support Fillman's multiplicity argument on Counts 3-5. The firearm and ammunition seized from Fillman were found in separate locations and on separate days. On October 2, 2006, officers found a .22 caliber rifle in Fillman's truck and .22 caliber ammunition in his pockets. Four days earlier, on September 28, law enforcement officials found Fillman's rifle in Gannon's apartment. Pursuant to 18 U.S.C. § 922(g), and *Hutching*, it is permissible to charge and punish Fillman separately for possessing the firearm and ammunition as each item was in a separate location. That the seizures arose from the same incident is of no consequence.

Even if Fillman's argument had merit, the government argues that his multiplicity claim is procedurally barred under 28 U.S.C. § 2255. Under that statute, claims which a defendant could have raised on direct appeal but did not are procedurally barred from consideration unless the prisoner demonstrates cause for the default and prejudice. *United States v. Walling*, 982 F.2d 447, 448 (10th Cir. 1992); *see also House v. Bell*, 547 U.S. 518, 537 (2006). "The Court has recognized a miscarriage-of-justice exception. "'[I]n appropriate cases,'" the Court has said, "'the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration.'" *House*, 547 U.S. at 536 (citing *Murray v. Carrier*, 477 U.S. 478, 495 (1986)) (quoting *Engle v. Issac*, 456 U.S. 107, 135 (1982))). The specific rule implementing the miscarriage of justice exception requires the prisoner to assert his innocence and prove that "in light of new evidence 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* at 536-37 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, even if Fillman's claim had merit, it would be procedurally barred because he could have raised the issue on his direct appeal but did not. Fillman argues that his counsel was ineffective on appeal and that is why he could not raise the issue; the court finds otherwise, as discussed below. Further, Fillman does not assert innocence so he cannot avail himself of the miscarriage of justice exception. For the above reasons, Fillman's claim that the indictment and subsequent punishment subjected him to double jeopardy in violation of the Fifth Amendment has no merit and his motion on this ground is denied.

*II. Sentencing Enhancement*

Next, Fillman argues that because he neither admitted nor did the jury find the enhancement applied in his sentencing, his Sixth Amendment right to a jury trial was violated. For the following reasons, this argument is without merit.

"After *Booker*, a constitutional violation lies only where a district court uses judge-found facts to enhance a defendant's sentence *mandatorily* under the U.S. Sentencing Guidelines (USSG), and not where a court merely applies such facts in a discretionary manner." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1130 (10th Cir. 2006) (emphasis in original). *Booker* requires the district courts to consider the sentencing guidelines when sentencing a defendant, but the district court may still find facts by a preponderance of the evidence. *Id.* When the district court uses the sentencing guidelines as advisory and finds certain facts by a preponderance of the evidence, the court may use those facts to enhance a defendant's sentence. *United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir. 2005).

Fillman's offense level was enhanced twelve levels based on findings that: (1) he possessed the firearm (rifle) in connection with the assault on Gannon and Anthony (four-level enhancement); (2) he threatened Anthony with a knife (two level enhancement), and (3) he held a knife on Officer Brunow while the officer was in uniform (six level enhancement). (Dkt. No. 69). During sentencing this court specifically found the testimony of Gannon, Anthony, and Officer Brunow credible both in overruling Fillman's objections to the sentence enhancements and in finding each enhancement was properly supported by a preponderance of the evidence. In the present motion Fillman failed to provide any evidence that the court's application of the sentence enhancements was in error. This court did not mandatorily enhance Fillman's sentence, but rather treated the guidelines as advisory in determining Fillman's sentence. Thus, the sentence enhancements based on those facts were not in error.

Additionally, in Fillman's direct appeal the Tenth Circuit held that "the district court committed no procedural error in calculating Fillman's Guidelines sentence." *United States v. Fillman*, 325 Fed. Appx. 700, 701 (10th Cir. 2009). The Tenth Circuit's opinion is binding in this case; moreover, an issue decided on direct appeal is typically barred in a 28 U.S.C. § 2255 motion. *United States v. Nolan*, 571 F.2d 528, 530 (10th Cir. 1978). For the above reasons, Fillman's claim that he was denied his Sixth Amendment right to a jury trial fails, and the court denies his motion to vacate on this ground.

*III. Ineffective Assistance of Counsel*

Fillman also argues that his Sixth Amendment right to effective assistance of counsel was violated before trial, during trial, and on appeal. (Dkt. No. 75). Each of his arguments are analyzed below.

To prevail on an ineffective assistance of counsel claim "the defendant must show that counsel's performance was deficient . . . [and] the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (alterations added). An attorney must give reasonably effective assistance in light of prevailing professional norms. *Id.* at 687-88. The burden is on the defendant to show that the attorney's "representation fell below an objective standard of reasonableness." *Id.* at 688. This means that a petitioner must allege specific and particularized instances of ineffective representation; "'[c]onclusory allegations will not suffice to warrant a hearing.'" *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995) (quoting *Andrews v. Shulsen*, 802 F.2d 1256, 1266 (10th Cir. 1986)).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Prejudice exists if counsel's acts or omissions "would have raised in a juror's mind a reasonable doubt concerning his guilt." *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004) (citing *Strickland*, 466 U.S. at 694-95).

Before trial Fillman argues that his attorney "failed to conduct an investigation, interview potential witnesses, apply for funds for expert witnesses in the defendant's behalf, and challenge a faulty indictment." (Dkt. No. 75). And he argues that counsel failed to recognize a defective

indictment. Fillman specifically argues that his attorney admitted on the record at trial that he did not adequately prepare for trial. To support his position, Fillman points to the following exchange during trial:

> THE COURT: Now with respect to the other issue on the instructions, I'm not going to give that those instructions the preliminaries because this is an issue that I wish had been brought to me, as I do the evidentiary issue, several days ago, but as it is I'm trying to read now Supreme Court cases during a recess of a trial to determine what the intent factors are. And, Sean, you should have had it to me, you should have briefed it. Is it in your proposed instructions or did you explain it because I didn't see it?
>
> DEFENSE COUNSEL: No, Judge. Third attorney on this matter. We thought we had it for a plea.
>
> THE COURT: I understand that too.
>
> DEFENSE COUNSEL: No, I didn't. As a matter of fact, I simply did not -- it is a convoluted case, and by the time I got the jury -- sanctions notebook, I figured out where we were going. If I would have, Judge, figured out where we were going, I would have been here earlier. I apologize.

(Dkt. No. 67).

The above exchange between counsel and the court does not in any way serve as an admission that he failed to prepare for trial. At its absolute worst, the court is expressing its frustration at a late submission of an issue, not an utter failure to raise an issue. The record shows that counsel adequately prepared Fillman's case for trial and thoroughly tried it. (Dkt. Nos. 67-69). When preparing for trial and during trial there is a strong presumption that an attorney's conduct is within the range of reasonable professional norms and that the conduct displays sound trial strategy. *Strickland*, 466 U.S. at 689. The above-quoted exchange does not in any way show that defense counsel's performance was defective.

Additionally, counsel's decision not to interview and call the witnesses that Fillman alleges would have testified favorably for him was well within the bounds of reasonable assistance. Fillman fails to show through affidavits or other sworn statements from his potential witnesses that they would have given favorable testimony. He only vaguely alleges that the witnesses would have testified that the destructive devices seized from him were pyrotechnic devices and that he was in the business of testing fireworks. Without specific evidentiary support for the proposed testimony this court refuses to hold that counsel erred by not calling the alleged witnesses. *United States v. Cervini*, 379 F.3d 987, 993-94 (10th Cir. 2004) (stating that "[d]istrict courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim"). Even if the witnesses would have testified favorably for Fillman, he still fails to establish prejudice. Here, Officer Bradford, Explosive Enforcement Officer for the Bureau of Alcohol, Tobacco, and Firearms, offered detailed testimony that in his expert opinion the devices seized from Fillman were bombs and not just "super firecrackers." (Dkt. No. 68). Even if the jury had listened to testimony from Fillman's friends that the devices were only fireworks, that testimony would not have been sufficient to create a reasonable probability that the result of the proceeding would have been different.

Fillman's argument that counsel was ineffective by failing to apply for funds for an expert witness is also unconvincing. Fillman fails to supply evidence or convincing argument that another expert would have testified that the devices found in his possession were anything other than bombs. Although Fillman speculates that another expert would have testified favorably, it is equally as likely that another expert would have testified unfavorably. *Boyle v. McKune*, 544 F.3d 1132, 1138-39 (10th Cir. 2008) (stating that a defendant must allege specific evidence to support an ineffective

12

assistance of counsel claim based on a failure to call an expert witness, pure speculation is not enough).

Fillman's argument that his counsel failed to recognize a faulty indictment is also without merit. As explained above, the indictment was not faulty and resulted in no Fifth Amendment violation of his constitutional rights. Therefore, Fillman's ineffective assistance of counsel claim on this ground fails.

During trial Fillman argues that counsel was ineffective because he failed thoroughly to cross-examine Officer Bradford to illuminate the difference between a "destructive device" and a "pyrotechnic device." The record supports the opposite conclusion. In fact, counsel did thoroughly cross-examine Officer Bradford about the nature of the devices seized from Fillman and whether the devices were merely pyrotechnic fireworks. (Dkt. No. 68).

Fillman also argues that defense counsel did not allow him to testify, in violation of his constitutional rights. Fillman points to the following statement made by defense counsel during sentencing:

> DEFENSE COUNSEL: Mr. Fillman is in a hamstrung position here about either testifying or about stating his particular positions to the presentence and probation officer. He's charged in the State of Kansas on a six-count complaint with aggravated kidnapping, battery, aggravated assault and assault upon Tammy Gannon and her young minor son. This has hamstrung Mr. Fillman in either being able to adequately speak with Probation and/or adequately address these in trial in that he has a second trial coming up, and he wishes to maintain his Fifth Amendment right not to incriminate himself.

(Dkt. No. 69).

It does not appear that counsel prohibited Fillman from testifying. But rather it appears that counsel had previously advised Fillman about the negative consequences of testifying and that

13

Fillman had agreed with him. A defendant's acceptance of counsel's advice not to testify involves a matter of trial strategy and "will not be considered ineffective assistance of counsel." *Hooks v. Ward*, 184 F.3d 1206, 1218-19 (10th Cir. 1999) (providing that if a defendant follows counsel's advice not to testify, the defendant cannot later claim ineffective assistance on that ground). The above statement also shows that counsel was aware that Fillman would waive his Fifth Amendment right against self-incrimination in his subsequent state trial if he testified at his federal trial. Had defense counsel not recognized this, he could have been subject to an ineffective assistance of counsel claim on that ground. Regardless, even if counsel prevented Fillman from testifying, he cannot prove that he was prejudiced by this failure. Fillman alleges that he would have testified that the devices seized from him were only pyrotechnic devices and not bombs. However, given the extensive and detailed testimony of Officer Bradford it is unlikely the jury would have rejected that testimony and accepted Fillman's account. And Fillman certainly cannot prove his testimony would have created reasonable doubt about his guilt.

Next, Fillman alleges that counsel "failed to present any mitigating evidence, failed to allow the defendant to testify in his own behalf, failed to recognize a defective indictment which led to a multiplicitous sentence, failed to identify a factually inaccurate presentence report, and failed to object to a fundamentally unfair sentencing proceeding in violation of Apprendi v. New Jersey." This court has already held that Fillman's failure to testify does not constitute ineffective assistance of counsel. Similarly, the indictment was not defective and his sentence did not violate *Apprendi*. Therefore, Fillman's remaining arguments pertaining to his sentencing will be considered here.

Fillman fails to establish either deficient performance by his counsel or prejudice during sentencing. First, Fillman provides no specific evidentiary support for counsel's alleged failures at

14

sentencing, rather he only provides conclusory allegations. Second, the record shows that defense counsel presented several objections to the presentence report and thoroughly argued for a lesser sentence. (Dkt. Nos. 55 and 69). It cannot be shown that defense counsel's performance fell below an objective standard of reasonableness. Further, Fillman was sentenced to 272 months, which is the lowest sentence recommended on the guidelines based on his criminal history and offense level. Even if counsel's performance was deficient, Fillman cannot establish any prejudice.

Finally, Fillman argues that his counsel was ineffective on appeal by failing to argue double jeopardy due to a multiplicitous indictment and by failing to argue that his sentence violated *Apprendi*. Ineffective assistance of counsel claims on appeal are judged by the same *Strickland* standard. *Hooks*, 184 F.3d at 1221. "When a defendant alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue." *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). If the issue is without merit, a defendant cannot show ineffective assistance of counsel due to a failure to raise that issue. *Id.* at 393. This court has already found that the indictment was not multiplicitous and that his sentence did not violate *Apprendi*; thus, Fillman's argument that counsel was ineffective on appeal fails.

Fillman has failed to sustain his burden under *Strickland* by showing his counsel's performance was deficient or, if performance was deficient, that he suffered prejudice as a result. Defense counsel acted well within the prevailing professional norms and Fillman failed to prove that there is a reasonable probability that the outcome would have been different.

The record in this case conclusively shows that Fillman is not entitled to relief. He did not allege specific facts, which even if true, would entitle him to relief. As a result, no evidentiary

hearing is required. 28 U.S.C. § 2255 (2006); *see also United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988).

IT IS ACCORDINGLY ORDERED this 29th day of September, 2010, that defendant Barry P. Fillman's Motion to Vacate under 28 U.S.C. § 2255 (Dkt. No. 75) and request for a hearing is denied.

<pre>
                                        s/J. Thomas Marten
                                        J. THOMAS MARTEN, JUDGE
</pre>